FILED
2020 Aug-19  PM 02:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ANTHONY KEITH HINTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:19-cv-01070-CLM-JHE |
| | ) | |
| ROBERT HEBB, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Anthony Keith Hinton filed a *pro se* complaint and amended complaints seeking monetary damages or injunctive relief pursuant to 42 U.S.C. § 1983 for violations of his civil rights. (Docs. 1, 10-12). Plaintiff names the following defendants: Officer Robert Hebb, Sgt. Richard Godsey, Officer Joe Binder, Captain Deaundra Johnson, Captain Shannon Caldwell, Officer Zac McLemore, and Officer Keller Speaks. (Doc. 1 at 2-3; doc. 11 at 2-3).[1] Plaintiff seeks monetary damages. (Doc. 11 at 5). In accordance with the usual practices of this Court and 28 U.S.C. § 636(b)(1), the complaint and amended complaints were referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I. Procedural History

On July 10, 2019, Plaintiff filed a complaint alleging defendants Hebb, Godsey, and Binder failed to protect him from harm and subjected him to excessive force on April 30, 2019, and further alleging defendant Hebb gave information to Gangster Disciples ("GD") that caused GD members to extort and stab him on May 16, 2019. (Doc. 1). On October 1, 2019, the undersigned entered

---

[1] Plaintiff identifies defendant Speaks's first name as "Kavin," but Speaks attests that his first name is "Keller."

an Order for Special Report directing defendants Hebb, Godsey, and Binder to respond to the allegations in the original complaint. (Doc. 7).

On October 10, 2019, Plaintiff filed a "Motion to Add Parties and Claims" and an amended complaint, (docs. 10-11), and on October 18, 2019, he filed a "Motion to Alter Amend Complaint 1983," (doc. 12). In addition to rehashing the allegations contained in the original complaint, Plaintiff moved to add Captain Deaundra Johnson, Captain Shannon Caldwell, Officer Zac McLemore, and Officer Keller Speaks as defendants based on events that occurred on June 27, 2019, and July 1, 2019. (*Id.*).

On October 22, 2019, the undersigned granted Plaintiff's motions and vacated the October 1, 2019 Order for Special Report. (Doc. 13). The undersigned entered a new Order for Special Report directing the Clerk to forward copies of the complaint and amended complaints, to each of the named defendants and directing the defendants to file a special report addressing the plaintiff's factual allegations. (Doc. 14). The undersigned advised the defendants that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (*Id.*).

On January 21, 2020, the defendants filed a special report, supplemented by affidavits and/or other evidence. (Doc. 25). On January 28, 2020, the undersigned notified the parties that the court would construe the special report as a motion for summary judgment and notified Plaintiff that he had twenty-one days to respond to the motion for summary judgment by filing affidavits or other material. (Doc. 26). The undersigned also advised Plaintiff of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. (*Id.*). *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).

On February 5, 2020, Plaintiff filed a motion requesting twenty-one days to respond to the Special Report, which the undersigned granted. (Docs. 27 & 28). On February 25, 2020, the court resent a copy of the *Griffith* order to Plaintiff at his updated address and further extended his time to respond until March 6, 2020. (Doc. 32). Plaintiff never filed a response to the defendants' motion for summary judgment.

## II. Standard of Review

Because the court has construed the defendants' special report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden

of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

When determining whether genuine and material factual disputes exist, the court must consider the parties' respective memoranda and exhibits and construe all facts, and all reasonable inferences drawn therefrom, in the light most favorable to the non movant.  *Nolen v. Paul Revere Life Ins.,* 32 F. Supp. 2d 211, 213 (E.D. Pa. 1998).  Thus, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment.  *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)).  Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally construed.  *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

Even though evidence is viewed "in a light most favorable to the nonmoving party," a court is not "constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.,* 20 F.3d 454, 458–59 (11th Cir. 1994).  For instance, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris,* 550 U.S. 372, 380 (2007).  Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson v. Liberty Lobb*y, 477 U.S. 242, (1986)).

### III. Summary Judgment Facts[2]

In April 2019, Plaintiff resided in L-Dorm of Donaldson Correctional Facility, which he declares had no security because there are no officers assigned to control the dorm or the cube. (Doc. 1 at 11).  On April 30, 2019, Plaintiff returned to his dorm after working on the institutional grass crew and sat on his dorm bed.  (*Id.*).  He attests two unidentified inmates came up behind him, and one held him around the neck while the other held a prison made box cutter as they demanded items of his property from his locker.  (*Id.*).  Plaintiff refused to comply, and the inmates cut him across the chest and began removing his property.  (*Id.*).  At that time, someone screamed "institutional count" and Plaintiff ran, but the inmates were able to cut him on the back of his left arm as he escaped.  (*Id.*).

Plaintiff further testifies that he ran out of L-Dorm to the South Unit office to report the assault.  (*Id.*).  When he entered the office, Officer Hebb and Sergeant Godsey jumped on him, kicked him in the face, pushed him on the ground, hit him on the backside of the head, and kneed him to his backside.  (*Id.*).  After beating Plaintiff for five to ten minutes, Officer Binder arrived. (*Id.*).  Plaintiff declares Binder handcuffed, hit, and pushed him into the wall very hard, and then escorted him to the Health Care Unit ("HCU") for a body chart and a drug test.  (*Id.*).   Upon completion of the medical evaluation, Plaintiff remained in the infirmary for eight hours handcuffed to a wall.  (*Id.*).  Once released from the infirmary, Plaintiff was placed in the Behavior Modification Unit ("BMU") cell "Y-20" and received a disciplinary infraction for creating a security hazard.  (*Id.*).

---

[2] Plaintiff's original complaint is the only document he signed as true and correct under penalty of perjury.  (Doc. 1 at 10).  As such, it is the only evidence that can be considered in opposition to the defendants' motion for summary judgment.

Defendants Hebb, Godsey, and Binder deny Plaintiff's allegations.  (Docs. 25-2, 25-3, & 25-5).   According to the April 30, 2019 Incident Report and Officer Hebb's declaration, Officer Hebb, the assigned Southside Rover, observed Plaintiff around 12:03 p.m. "stumbling" around as he came through the gate of the Southside Unit.  (Doc. 25-3 at 1; doc. 25-7 at 3).  Plaintiff mumbled when Hebb asked where he was going.   (Id.).   Based on Hebb's experience, Plaintiff appeared to be high on the drug "Flakka."  (Id.).

Hebb asked Plaintiff if he was okay, and Plaintiff ran into the South Side shift office and closed the door behind him.  (Id.).   Hebb ran into the office and found Plaintiff squatting beside Officer Falls, who also was assigned as a South Side rover, and screaming "that the 'G-Ds' put a hit on him."  (Id.).   Hebb and Falls ordered Plaintiff to lie face down on the ground to be handcuffed, and Plaintiff complied.  (Id.).   Hebb called Lt. Thrasher, who reported to the unit with leg irons.  (Id.).   Thrasher questioned Plaintiff, and Plaintiff told Thrasher that he was "wigging out" from smoking "Flakka."  (Doc. 25-3 at 1).   Hebb attests, and the incident report reflects, that no contraband was found on Plaintiff and that Lt. Thrasher escorted Plaintiff to the infirmary. (Doc. 25-3 at 1; doc. 25-7 at 1).

Sergeant Godsey attests that around 12:30 p.m. on April 30, 2019, he heard Officer Hebb radio Lt. Thrasher and ask him to report to the South Unit.  (Doc. 25-2).  At the time, Godsey was restricted to light duty due to a medical condition and restricted to desk duty in the Shift Commander's office, so he could not respond to Hebb's request for assistance.  (Id.).  A short time later, Godsey heard on Lt. Thrasher's radio that the hallway was to be secured and walked out to the west hallway where he observed Thrasher escorting Plaintiff, who was handcuffed, to the infirmary.  (Id.).   Godsey denies that he ever reported to the South Unit or that he had any

interaction with or used any force against Plaintiff on April 30, 2019. (*Id*.). Lt. Binder testifies he has no knowledge of the incident. (Doc. 25-5).

At 12:23 p.m., Nurse Doug Green examined Plaintiff and recorded that Plaintiff said, "'I got a hit out on me. Somebody took a swipe [at] me couple days ago" on his body chart. (Doc. 25-8). The only injury Green observed during his evaluation was an old and healing "2 cm x 0.2 cm laceration to Plaintiff's upper abdomen with no signs or symptoms of infection. (*Id*.). After the medical assessment, Plaintiff was placed in a Behavioral Modification cell "Y-20" pending disciplinary action for intentionally creating a safety and security hazard. (Doc. 25-7 at 1). None of the evidence reveals how long or in what state Plaintiff remained in the prison infirmary before the placement. Neither the body chart nor the incident report identifies Lt. Binder as a party to the April 30, 2019 incident. (Doc. 25-7 at 1; doc. 25-8).

On May 8, 2019, Plaintiff attests that he was released from the BMU and placed in Dorm K even though he had informed Shift Commander Watts that he could not return to population because he had enemies who took his property and tried to extort him. (Doc. 1 at 11-12). Inmates Brown and Thomas immediately came to Plaintiff's bed and demanded money. (*Id*. at 12). Plaintiff attests Brown and Thomas stated that he owed the GDs money because Plaintiff had accused the GDs of trying to kill him in the disciplinary report written by Officer Hebb. (*Id*.). Plaintiff refused to pay the money and did not inform any corrections officers about the incident. (*Id*.).

On May 16, 2019, Plaintiff declares two unidentified inmates came to his bed and stabbed him twice in his right leg. (*Id*. at 12). Plaintiff reported the assault in the South Unit office and was escorted to the infirmary for a body chart and then placed back in the BMU, Cell "Y-8." (*Id*.). Plaintiff declares Hebb told the GDs about his accusation and this put his life in danger. (*Id*.).

The defendants represent that "[a] search of institutional records and medical records revealed [Plaintiff] did not report any altercation with another inmate, nor was he seen in the infirmary for any injuries on or around May 16, 2019, for any such altercation." (Doc. 25 at 8-9). Records pertaining to a June 7, 2019 incident were discovered and produced. (*Id.* at 9).   In the Incident Report, Officer Carlos Jones documented that during a wellness check of Y-Unit at around 6:30 p.m. on June 7, 2019, Plaintiff reported that his cell partner had threatened to force him to have oral sex but had not touched him. (Doc. 7-8).  Carlos notified Sgt. Johnson, who escorted Plaintiff to the infirmary where Registered Nurse Shelley Roman conducted a medical examination and Mental Health Nurse Patricia McGrue conducted a mental health examination. (*Id.*).

At 7:19 p.m., Nurse Roman evaluated Plaintiff and recorded on his body chart that he stated, "'A member of the [GDs] tried to make me have oral sex with him in Y-44." (Doc. 25-10). Roman observed no injuries to Plaintiff. (*Id.*).  The incident report states that Captain Deaundra Johnson was notified, and Plaintiff was moved to BMU cell "Y-42." (Doc. 25-9).  Captain Johnson conducted a Prison Rape Elimination Act ("PREA") interview of Plaintiff, who stated that his cellmate had become "irate" when Plaintiff refused his sexual advances. (*Id.*).  Because the cellmate stated he had no knowledge of Plaintiff's allegations, and there was no evidence that either inmate had any injuries as if a fight had occurred in the cell, Captain Johnson deemed the incident unsubstantiated. (*Id.*).

### III. Analysis

**A. Captain Deaundra Johnson, Captain Shannon Caldwell, Officer Zac McLemore, and Officer Keller Speaks**

In support of their motion for summary judgment, defendants Johnson, Caldwell, McLemore, and Speaks have filed affidavits denying Plaintiff's allegations and have produced documents or other supporting evidence to show that there is no genuine dispute of material fact

8

with regard to Plaintiff's claims against them.  (Docs. 25-1, 25-4, 25-6, and 25-9 through 25-13).

All allegations against these defendants are found in Plaintiff's motions to amend the complaint

and amended complaint.  (Docs. 10-12).  Plaintiff did not notarize or sign any of these documents

as true and correct under penalty of perjury.  (*Id*.).   Therefore, the allegations contained therein

cannot be considered as evidence for summary judgment purposes, and Plaintiff was made aware

of these requirements in the *Griffith* Order, (doc. 26).  Accordingly, Plaintiff has failed to create

any genuine dispute with regard to his claims against defendants Johnson, Caldwell, McLemore,

and Speaks, and their motion for summary judgment is due to be granted.

### B.  Officer Robert Hebb, Sgt. Richard Godsey, and Officer Joe Binder

#### 1.  Sovereign Immunity

To the extent Plaintiff requests monetary damages for the constitutional claims against

defendants Hebb, Godsey, and Binder in their official capacities, his claims are due to be

dismissed.  A law "suit against the State [of Alabama] and its [agencies for monetary damages or

injunctive relief is] barred by the Eleventh Amendment, unless Alabama has consented to the filing

of such a suit."  *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (citing *Edelman v. Jordan*, 415 U.S.

651 (1974)).  No such consent can "be given under Art. I, Sec. 14, of the Alabama Constitution,

which provides that 'the State of Alabama shall never be made a defendant in any court of law or

equity.'"  *Id.*  Further, "a suit against a state official in his or her official capacity is not a suit

against the official but rather is a suit against the official's office.  As such, it is not different from

a suit against the state itself."  *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71 (1989)

(citation omitted).

The Alabama Department of Corrections ("ADOC") is an agency of the State of Alabama,

and all defendants are ADOC employees.  As such, Plaintiff suit against Hebb, Godsey, and Binder

in their official capacities is no different than a lawsuit against the State of Alabama.  Therefore, Eleventh Amendment immunity bars this action against Hebb, Godsey, and Binder to the extent they are sued in their official capacities.

## 2. Excessive Force

Plaintiff's April 30, 2019 excessive force claim against defendants Hebb, Godsey, and Binder is governed by the Eighth Amendment's Cruel and Unusual Punishments Clause.  The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> [W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*, whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

*Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order.  Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates.  Both situations may require prison officials to act quickly and decisively.  Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 321-22).

"The use of force must stop when the need for it to maintain or restore discipline no longer exists."  *Skrtich v. Thornton*, 280 F.3d 1295, 1304 (11th Cir. 2002) (citing *Whitley*, 475 at 320-21).  Therefore, if a non-compliant inmate has been restrained by guards and no longer poses a threat, he "cannot be subjected to gratuitous or disproportionate force that has no object but to

inflict pain." (*Id.*).

The Supreme Court set out certain factors that should be considered when evaluating whether the force used was excessive. These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Id.* at 7; *see Hewett v. Jarrad*, 786 F.2d 1080, 1085 (11th Cir. 1986).

In applying the foregoing factors to the facts of a particular case, the Supreme Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9 (internal citations omitted).

Applying the *Whitley* factors to the above facts and inferences, Plaintiff posed no threat to defendants Hebb and Godsey when he ran into the shift office on April 30, 2019, to report that he had just been slashed across the chest and the back of his arm by two inmates. Plaintiff declares that defendants Godsey and Hebb, hit him, kicked him in the face, and beat him for five to ten minutes, and that Lt. Binder roughly handcuffed him, hit him, and pushed him hard against the wall.

Defendants Hebb, Godsey, and Binder dispute Plaintiff's version of events, and, at this stage of the proceedings, the court must construe the facts in the light most favorable to Plaintiff and draw all reasonable inferences from those facts in his favor. *Bradley v. Franklin Collection*

11

*Serv., Inc.*, 739 F.3d 606, 608 (11th Cir. 2014).   Generally, where a conflict exists between the parties' allegations or evidence, "the plaintiff's evidence is to be believed and all reasonable inferences must be drawn in his favor.  *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).   However, the court is not constrained to accept all the plaintiff's allegations, particularly when his version of an event is either blatantly contradicted by the record or fails to meet the requirement that he produce a scintilla of evidence from which the court could conclude a reasonable jury would find in his favor.   For the reasons set forth below, Plaintiff fails to demonstrate a scintilla of evidence to support this claim.

Plaintiff does not dispute the validity of the April 30, 2019 Incident Report, which does not identify defendants Godsey and Binder as having any involvement in the event.  Defendant Godsey denies he was even in the shift office, as he was restricted to the Shift Commander's office on light duty because of an injury.  Lt. Binder testifies that he has no knowledge of the incident.

Plaintiff does not deny that he was under the influence of Flakka when he returned from his institutional yard job.  Plaintiff's behavior upon his initial interaction with defendant Hebb led Hebb to believe Plaintiff was high on Flakka.  Plaintiff ran to the shift office and shut the door when Hebb asked if he was okay.  Plaintiff does not deny that he told Lt. Thrasher (or a corrections officer) that he was wigging out on Flakka.   Defendant Hebb did not consider Plaintiff to be a threat to anyone, as the evidence shows that he entered the office and encountered Plaintiff screaming to him and Officer Falls that the GD's had a hit out on him and that Plaintiff immediately complied with his direct order to lay down and submit to handcuffs.  Thus, factors one through three weigh in Plaintiff's favor.

As for the third and fourth factors, Plaintiff declares Godsey and Hebb hit him in the head, kicked him in the face, kneed him in the back, and beat him for five to ten minutes.  When Lt.

Binder arrived, he handcuffed Plaintiff, hit him, and pushed him very hard into a wall, before escorting him to the infirmary for a body chart and drug test.

Though Plaintiff declares he was slashed with a box cutter by inmates and severely beaten by the defendants, the only statement he made to the examining nurse was that he had a hit out on him and that someone had taken a swipe at him a couple of days earlier.  The nurse observed no injuries to Plaintiff except an old, healing, and very minor cut to his chest.  This evidence directly contradicts Plaintiff's allegations to the extent that the court should not afford much weight to them and find that factors three and four weigh in the defendants' favor.

"The 'core judicial inquiry'" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7).  However, in this case, there is no evidence that Plaintiff suffered any physical injury from any source on April 30, 2019, or that any defendant acted maliciously and for any reason than to restore discipline.

Summary judgment can be granted in favor of a defendant when the most credible elements of the record diverges dramatically from a plaintiff's claims.  Such is the case with regard to this claim.  No reasonable jury could find that defendants Hebb, Godsey or Binder used any intemperate or malicious force against the plaintiff on April 30, 2019, or that they caused him any physical injury, Accordingly, defendants' motion for summary judgment is due to be granted as to Plaintiff's excessive force claim.

### 3.  Conditions of Confinement

To establish an Eighth Amendment violation, a plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and

unusual punishment], *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), (2) the defendant[s'] 'deliberate indifference' to that condition, *Wilson v. Seiter*, [502] U.S. [294, 303], (1991), and (3) causation, *Williams v. Bennett*, 689 F.2d 1389-90 (11th Cir. 1982)." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (footnotes omitted), *cert. denied*, 510 U.S. 1164 (1994).  Whether a particular condition of confinement constituted cruel and unusual punishment is an objective inquiry; whether prison officials were deliberately indifferent to that condition is a subjective inquiry.  *See Wilson v. Seiter*, 502 U.S. at 290.

Prison conditions amount to cruel and unusual punishment only when they result in "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  While it is the duty of prison officials to furnish prisoners with "reasonably adequate" food, clothing, shelter, medical care, and sanitation, *Newman v. Alabama*, 559 F.2d 283, 286 (5th Cir. 1977), *rev'd in part on other grounds*, 438 U.S. 781 (1978), the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. at 349.  As the Eleventh Circuit Court of Appeals observed in *Newman*: "[T]he Constitution does not require that prisoners be provided any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration."  559 F.2d at 291.

> [C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.

*Rhodes v. Chapman*, 452 U.S. at 347.

"To be deliberately indifferent, a prison official must knowingly or recklessly disregard an inmate's basic needs." *LaMarca v. Turner*, 995 F.2d at 1535.  In order to establish that an official was deliberately indifferent, "a plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal

to prevent the harm can be inferred from the defendant's failure to prevent it.'" *Id*. at 1535 (quoting *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985), *cert. denied*, 479 U.S. 816 (1986)). *Accord Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).

Plaintiff alleges that, after he received a body chart on April 30, 2019, he remained handcuffed in the infirmary to a wall for eight hours before his transfer to the BMU.  Such conditions do not rise to the level of extreme deprivation envisioned by the Eighth Amendment, particularly when Plaintiff does not deny that he was under the influence of Flakka or that corrections officials believed he was under the influence.  Plaintiff does not contend he was handcuffed to the wall, presumably by Lt. Binder, in an uncomfortable position or that he was not allowed to sit or lie down during his eight hours in the infirmary.  Plaintiff does not allege Lt. Binder had any further contact with him after initially handcuffing him to the wall.  Plaintiff also does not declare Lt. Binder or the medical personnel in the infirmary failed to monitor him or allow him to go to the restroom or provide him water or assistance if needed.  Finally, Plaintiff does not contend that he suffered any injury or real discomfort for the relatively short period that he remained in the infirmary.

Plaintiff's allegations fail to create a genuine dispute regarding his claim that Lt. Binder subjected him to an objectively serious deprivation in connection with the conditions of confinement in the infirmary.  The allegations also fail to demonstrate that defendant Binder was subjectively aware that leaving Plaintiff in the infirmary would substantially risk harming him.  There is no evidence Plaintiff suffered any harm.  Accordingly, defendant Binder's motion for summary judgment is due to be granted as to Plaintiff's conditions of confinement claim.

### 4.  Failure to Protect

Although prison officials have a duty to protect inmates from violence by other prisoners, they are not "'the guarantor of a prisoner's safety.'"  *Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (quoting *Popham v. City of Talladega,* 908 F.2d 1561, 1564 (11th Cir. 1990)).  Instead, "[w]ithin [a prison's] volatile 'community,' prison administrators are . . . under an obligation to take *reasonable measures* to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) (first alteration and emphasis supplied).  Therefore, not "'every injury suffered by one prisoner at the hands of another [] translates into [a] constitutional liability....'"  *Purcell*, 400 F.3d at 1319 (quoting *Farmer v. Brennan,* 511 U.S. 825, 833 (1994) (citations omitted)).

"To survive summary judgment" the plaintiff must "'produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'"  *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013) (quoting *Carter v. Galloway,* 352 F.3d 1346, 1349 (11th Cir. 2003) (per curiam) (internal quotation marks omitted)). The first element requires the plaintiff to "demonstrate 'an objectively substantial risk of serious harm to prisoners.'"  *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Marsh v. Butler Cnty., Ala.,* 268 F.3d 1014, 1028–29 (11th Cir. 2001) (en banc), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  The Eighth Amendment is violated only where there is a strong likelihood, rather than a mere possibility, of a risk of injury. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990).  "'[O]ccasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment.'"  *Purcell*, 400 F.3d at 1320 (quoting *Woodhous v. Virginia*, 487 F.2d 889, 890 (4th Cir. 1973) (citation omitted)).

The second element – the defendant's deliberate indifference to that risk – has two components, one subjective and one objective.  To satisfy the subjective component, a plaintiff must produce evidence that the defendant "actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (citing *Rodriguez v. Sec'y for Dep't of Corr.,* 508 F.3d 611, 617 (11th Cir. 2007) (alterations in original)).  "In determining subjective knowledge, a court is to inquire whether the defendant was aware of a 'particularized threat or fear felt by [the plaintiff].'" *McBride v. Rivers*, 170 F. App'x 648, 654 (11th Cir. 2006) (quoting *Carter,* 352 F.3d at 1350).  "The defendant 'must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the [defendant] must also draw that inference.'" *Id.* (quoting *Carter*, 352 F.3d at 1349) (quotation and marks omitted).  To satisfy the objective component, a plaintiff must produce evidence that the defendant "disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner." *Id.*

"Deliberate indifference describes a state of mind more blameworthy than negligence," and an ordinary lack of due care for a prisoner's interest or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 835; *see also Davidson v. Cannon*, 474 U.S. 344, 347-348 (1986).  "Merely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Brown*, 894 F.2d at 1537; *see also Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016) (citing *e.g.*, *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *Carter*, 352 F.3d at 1350.  Thus, the plaintiff must demonstrate a prison official "actually (subjectively) knows that an inmate is facing a substantial risk of harm, yet disregards that known risk by failing to respond to it in an (objectively) reasonable manner." *Rodriguez*, 508 F.3d at 617.  To state a cause of action under § 1983, the allegations must rise to the level of "a conscious or callous

indifference to a prisoner's rights." *Williams v. Bennett*, 689 F.2d 1379, 1380 (11th Cr. 1982) (citations omitted).

With regard to the April 30, 2019 inmate attack in L-Dorm, Plaintiff conclusorily alleges that no security officers were assigned in the dorm or the cube.   In addition to failing to identify any corrections officials responsible for security assignments as defendants, Plaintiff does not refute the validity of the Institutional Incident Report, which demonstrates that defendant Hebb and Officer Falls were assigned to and acting as security rovers in the South Unit on that day. Furthermore, "there is nothing inherently wrong with having only a few staff members supervise inmates." *Laube v. Haley*, 234 F. Supp. 2d 1227, 1245 (M.D. Ala. 2002).   Therefore, Plaintiff cannot establish a substantial risk to his safety based solely on his understaffing allegations.   At best, Plaintiff's version of events displays an isolated attack by one prisoner on another. *Harrison v. Culliver*, 746 F.3d 1288, 1299 (11th Cir. 2014) (citing *Percell*, 400 F.3d at 1320).   Such facts do not constitute cruel and unusual punishment.   (*Id.*).

With regard to the second inmate-on-inmate act of violence, Plaintiff does not name Commander Watts as a defendant.   Furthermore, Plaintiff did not report to any corrections officers or defendants the May 8, 2019 extortion attempt by inmates Brown and Thomas, to which he refused to acquiesce, and which purportedly occurred because of his claim that the GD's had a hit on him had been memorialized in defendant Hebb's disciplinary infraction.   Plaintiff does not allege that inmates Brown and Thomas told him that Lt. Hebb personally revealed the contents of the disciplinary report to them.   Because he does not deny that he was repeatedly screaming the accusation in the shift office on April 30, 2019, and repeated similar accusations in the infirmary, his contention that Lt. Hebb informed Brown and Thomas is speculative and wholly unsupported.

Instead of making an immediate report on May 8, 2019, Plaintiff remained silent in the dorm for almost one week, or until May 16, 2019, when he contends two unidentified inmates stabbed him in the leg.  Plaintiff does not reveal the circumstances surrounding the incident and does not allege the inmates were GDs or that they made any statements to him that the attack was retribution for his accusations.  Plaintiff does not take issue with the defendants' representation that there are no institutional records whatsoever evidencing that any incident with Plaintiff occurred on May 16, 2019.

Plaintiff undisputedly failed to notify any corrections officers, much less any defendant, that any inmates posed a serious danger to him in the open dorm.   Plaintiff has not presented evidence sufficient to create a genuine dispute of fact with regard to his assertion that defendant Hebb notified the GDs of his accusation for the purpose of causing him any harm.  The absence of any institutional record pertaining to Plaintiff on May 16, 2019, wholly contradicts Plaintiff's version of events.  Thus, Plaintiff has failed to demonstrate defendant Hebb "subjectively knew of the substantial risk of serious harm" to him in the dorm or that defendant Hebb "knowingly or recklessly 'disregard[ed] that risk by failing to take reasonable measures to abate it.  *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1583 (11th Cir. 1995) (quoting *Farmer,* 511 U.S. at 843, 848). Even when the facts are viewed in a light most favorable to Plaintiff, he has failed to create a genuine dispute of material fact supporting each element of his failure to protect claim against defendant Hebb.  Thus, the motion for summary judgment is due to be granted as to the failure to protect claim against defendant Hebb.

### V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** the motion for summary judgment be **GRANTED** and this action be **DISMISSED WITH PREJUDICE**

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation.  A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting.  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.  An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order.  In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice.  11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations.  The district judge must conduct a hearing if required by law.  Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence.  Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record.  The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may only appeal from a final judgment entered by a district judge.

DONE this 19th day of August, 2020.

_____

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE